**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Maria Reyes,<br>Plaintiff,<br>v.<br>William Scotsman Incorporated,<br>Defendant. | No. CV-25-02767-PHX-DWL<br>**ORDER** |

Maria Reyes ("Plaintiff") worked for William Scotsman Incorporated ("Defendant") as a Senior Benefits Specialist. Beginning in February 2024, Plaintiff took 12 weeks of leave under the Family Medical Leave Act ("FMLA"). While on leave, Plaintiff was informed that she would not receive her 2023 bonus due to a verbal warning she had received before going out on FMLA leave. In May 2024, two weeks after her FMLA leave expired, Plaintiff was terminated.

In this action, Plaintiff has asserted claims against Defendant for disability discrimination, failure to accommodate, and retaliation in violation of the Americans With Disabilities Act ("ADA"); interference and retaliation in violation of the FMLA; and promissory estoppel. Defendant has, in turn, moved to dismiss Plaintiff's ADA claims. (Doc. 15.) For the reasons that follow, the motion is granted but Plaintiff is granted leave to amend.

…

…

## BACKGROUND

I. Factual Background

The following facts, presumed true, are derived from Plaintiff's operative pleading, the First Amended Complaint ("FAC"). (Doc. 14.)

Plaintiff worked for Defendant "from November 2022 until she was terminated on or about May 20, 2024." (*Id.* ¶ 14.) Plaintiff "worked at all times for Defendant as a Senior Benefits Specialist, managing benefits services and leaves of absence for her assigned area, among other duties." (*Id.* ¶ 15.)

"Plaintiff suffers from generalized anxiety disorder." (*Id.* ¶ 17.) This condition "substantially limit[s] one or more of Plaintiff's major life activities, including but not limited to concentration, focus, thinking, sleeping, and interacting with others." (*Id.* ¶ 18.)

From November 2022 until approximately September 2023, "Plaintiff reported directly to Heather Vertrees." (*Id.* ¶ 20.) "Plaintiff consistently performed her job well, receiving praise from her then-supervisor Ms. Vertrees." (*Id.* ¶ 21.)

In or about August 2023, "Defendant implemented a significant overhaul of its benefits system, which required Plaintiff to work significantly more hours than she had been previously." (*Id.* ¶ 22.)

In or about September 2023, "Defendant hired Kyla Pennington as its Director of Benefits, and Plaintiff began reporting directly to Ms. Pennington." (*Id.* ¶ 23.)

The FAC alleges that "Ms. Pennington had limited experience in benefits management when Defendant hired her into the Director of Benefits Role." (*Id.* ¶ 24.) "Ms. Pennington's lack of experience and knowledge made Plaintiff's work extraordinarily challenging." (*Id.* ¶ 25.)

"In addition to helping drive the overhaul of Defendant's benefits system, Plaintiff also had to explain to Ms. Pennington on a regular basis why Plaintiff was taking certain actions related to that overhaul, due to Ms. Pennington's lack of knowledge and experience in that area." (*Id.* ¶ 26.) "The benefits system overhaul was also occurring during Defendant's open benefits enrollment period, which is a busy time of year for the benefits

department, even in the absence of a benefits system overhaul and a Director with little knowledge or experience in benefits." (*Id.* ¶ 27.)

"Plaintiff's workload was therefore exceptionally high." (*Id.* ¶ 28.) "Despite that high workload, Plaintiff continued to excel in her position, as she had done throughout her employment." (*Id.* ¶ 29.)

In November 2023, "the overwhelming and unrelenting workload prompted Plaintiff to reach out to Ms. Pennington and schedule a meeting with her to discuss that workload." (*Id.* ¶ 30.) "Ms. Pennington then cancelled that meeting without any explanation." (*Id.* ¶ 31.)

In or about December 2023, "Plaintiff learned that her colleague, a fellow Senior Benefits Specialist, was responsible for managing the benefits for approximately 600 fewer employees than Plaintiff was, and therefore had a significantly reduced workload compared to Plaintiff." (*Id.* ¶ 32.)

That month, "[i]n a 1:1 meeting with Ms. Pennington," "Plaintiff informed Ms. Pennington that she was feeling overwhelmed by her workload, and provided her the information showing her colleague with a significantly reduced workload." (*Id.* ¶ 33.) "Ms. Pennington told Plaintiff she would set up a meeting with Plaintiff to discuss Plaintiff's workload." (*Id.*¶ 34.) "Ms. Pennington never scheduled that meeting." (*Id.* ¶ 35.)

In or about late December 2023/early January 2024, "Plaintiff took one week off of work, believing that she was supposed to return to work on a Wednesday, but Defendant apparently believing she was supposed to return on that Tuesday." (*Id.* ¶ 36.) In January 2024, "[a]s a result of that misunderstanding, Defendant, through Ms. Pennington, provided Plaintiff with a verbal warning." (*Id.* ¶ 37.)

"Plaintiff was eligible for, and had earned, a bonus for her outstanding work in 2023." (*Id.* ¶ 38.) "During the same meeting in which Defendant provided Plaintiff with her verbal warning, Ms. Pennington told Plaintiff that the verbal warning would not affect her 2023 bonus, and that she would still receive it." (*Id.* ¶ 39.) "In a 1:1 meeting with Ms.

Pennington shortly thereafter, Ms. Pennington told Plaintiff that she had spoken with the Director of Employee Relations, who further confirmed that Plaintiff would receive her 2023 bonus." (*Id.* ¶ 40.)

"Due to rising stress and anxiety, and Defendant's failure to discuss or address Plaintiff's overwhelming workload with her and possible solutions, Plaintiff sought FMLA leave to address her rapidly worsening mental health condition, coordinating that leave through Defendant's third-party benefits manager, Voya Financial." (*Id.* ¶ 41.) "Plaintiff did not inform her supervisor that her FMLA leave was for mental health treatment because she was concerned that doing so would result in further dismissal or minimization of her needs, as her prior request for help had been ignored. She reasonably feared stigma and retaliation if she disclosed her actual condition." (*Id.* ¶ 42.)

On February 6, 2024, "Plaintiff went out on approved FMLA leave . . . initially for 30 days per her primary care physician." (*Id.* ¶ 43.) "During that time, Plaintiff sought the care of a therapist to address her mental health condition, but was unable to find one for the first several weeks of leave." (*Id.* ¶ 44.)

"As the 30-day deadline approached, Plaintiff's primary care physician determined that Plaintiff should remain on leave for at least the full amount of her available FMLA leave, or 12 weeks in total." (*Id.* ¶ 45.) "Defendant's third-party vendor, Voya Financial, approved Plaintiff's FMLA leave for the remainder of her available leave, with a return-to-work date scheduled for the end of that leave, in early May 2024." (*Id.* ¶ 46.) "Plaintiff reasonably expected reinstatement to the same or an equivalent position at the conclusion of her protected leave." (*Id.* ¶ 47.)

In mid-March 2024, "Plaintiff was able to engage the services of a therapist . . . and began treatments with said therapist." (*Id.* ¶ 48.) That same month, "Defendant issued 2023 bonuses to its employees, but Plaintiff did not receive her bonus." (*Id.* ¶ 49.)

"Plaintiff reached out to Defendant's Vice President of People Kim Prack, who informed her that she was not going to receive her bonus due to her January 2024 verbal warning." (*Id.* ¶ 50.) "Plaintiff informed Ms. Prack that she had twice been told that her

verbal warning would not affect her bonus eligibility and that she would in fact receive her 2023 bonus." (*Id.* ¶ 51.) "Rather than address that issue, Defendant told Plaintiff that, once she returned to work, if she completed 90 days of satisfactory work she would receive her bonus payment." (*Id.* ¶ 52.)

"Although Defendant maintains a supposed company-wide policy denying bonuses to employees who receive discipline, Defendant twice explicitly assured Plaintiff that her verbal warning in January 2024 would not affect her earned 2023 bonus." (*Id.* ¶ 53.) The FAC alleges that "[o]nly after Plaintiff took protected FMLA leave did Defendant inform Plaintiff that she would not receive her bonus payment" and that "Defendant's selective and retaliatory application of this policy was in bad faith and punitive." (*Id.* ¶¶ 54-55.)

"When Plaintiff's FMLA leave expired, she was still suffering from generalized anxiety disorder and was continuing to experience disabling symptoms that required a short, finite extension of leave as a reasonable accommodation." (*Id.* ¶ 56.) The FAC alleges that "[d]espite these limitations, Plaintiff was a qualified individual with a disability under the ADA as she was capable of performing the essential functions of her position with a reasonable accommodation." (*Id.* ¶ 57.) "Specifically, Plaintiff needed a short, finite extension of her leave—an accommodation recognized under federal law—to allow her to recover adequately and return to work in a stable condition." (*Id.* ¶ 58.)

The FAC alleges that "Defendant knew or should have known that, due to Plaintiff's full 12 weeks of FMLA leave, and receiving Short Term Disability payments through May 31, 2024, Plaintiff may be an individual suffering from a disability." (*Id.* ¶ 59.) "Despite that knowledge, or the fact that Defendant should have had that knowledge, Defendant failed to explore accommodations with Plaintiff under the ADA." (*Id.* ¶ 60.)

"Defendant did not coordinate Plaintiff's return from her FMLA leave in any way. It did not confirm her return-to-work date, did not inquire if she needed any assistance in returning to work, did not ask her if she required additional leave, and did not engage in the interactive process as required by the ADA." (*Id.* ¶ 61.) "Defendant did not have, or did not follow, any established practice to proactively communicate with or support

employees returning from FMLA leave, despite knowing such leave often requires additional transitional support or accommodation." (*Id.* ¶ 62.) "Instead, . . . Defendant outsourced its FMLA leave coordination to Voya Financial." (*Id.* ¶ 63.)

"When Plaintiff's FMLA leave expired, no one from Defendant reached out to confirm her return-to-work date, ask if she needed additional time off, or otherwise inquired about her ability to work." (*Id.* ¶ 68.) "Defendant instead terminated Plaintiff's employment two weeks after her protected FMLA leave expired, based on her alleged performance deficiencies and her January 2024 verbal warning." (*Id.* ¶ 69.)

"Under Plaintiff's prior supervisor, Ms. Vertrees, Plaintiff never received negative performance evaluations, reviews, or feedback." (*Id.* ¶ 70.) "Only when Ms. Pennington became Plaintiff's supervisor, the same Ms. Pennington who ignored Plaintiff's requests for help with her overwhelming workload, did any alleged performance deficiencies arise." (*Id.* ¶ 71.)

The FAC alleges that "[a]ny alleged performance deficiencies only came to light during Plaintiff's protected FMLA leave." (*Id.* ¶ 72.) "Defendant did not regularly audit the work product of other employees, but did audit Plaintiff's work product while she was out on protected FMLA leave" and "Defendant did not have an established practice or policy of retroactively auditing employee work product absent some disciplinary trigger." (*Id.* ¶¶ 73-74.) The FAC also alleges that "Defendant's decision to review Plaintiff's prior work occurred solely because Plaintiff exercised her FMLA rights, reflecting retaliatory intent." (*Id.* ¶ 74.)

"Defendant did not provide, other than the attendance-related January 2024 issue, any performance-related concerns, discipline, or feedback to Plaintiff prior to her taking FMLA leave." (*Id.* ¶ 75.) "Instead, Defendant conveniently 'discovered' alleged performance deficiencies only while Plaintiff was out on protected FMLA leave." (*Id.* ¶ 76.) The FAC alleges that "rather than raise these alleged performance issues to Plaintiff and offer her an opportunity to address them, or provide her with a written warning, Defendant accelerated directly to termination." (*Id.* ¶ 78.)

II. Procedural Background

On December 4, 2024, Plaintiff filed a Charge of Discrimination with the EEOC. (*Id.* ¶ 10.) On May 8, 2025, Plaintiff was sent a right to sue letter. (*Id.*)

On August 4, 2025, Plaintiff initiated this action. (Doc. 1.)

On January 5, 2026, Plaintiff filed the FAC. (Doc. 14.) The FAC asserts five causes of action: (1) Violation of the ADA—Disability Discrimination and Failure to Accommodate (*id.* ¶¶ 82-93); (2) Violation of the ADA—Retaliation (*id.* ¶¶ 94-105); (3) Violation of the FMLA—Interference (*id.* ¶¶ 106-119); (4) Violation of the FMLA—Retaliation (*id.* ¶¶ 120-132); and (5) Promissory Estoppel (*id.* ¶¶ 133-137).

On January 20, 2026, Defendant filed the pending motion to dismiss Counts One and Two of the FAC. (Doc. 15.) The motion is now fully briefed (Docs. 16, 17) and neither side requested oral argument.

**DISCUSSION**

I. Legal Standard

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

…

II. Analysis

A. **Disability Discrimination (Count One)**[1]

1. The Parties' Arguments

Defendant argues that Plaintiff has failed to state a claim for disability discrimination under the ADA for three reasons. First, Defendant argues that "Plaintiff never alleges she informed Defendant of any disability" and "[w]ithout disclosure, Defendant could not have known about any alleged impairment, nor could it have 'regarded' her as disabled." (Doc. 15 at 4.) Second, Defendant argues that "Plaintiff does not sufficiently allege she was a 'qualified individual.'" (*Id.*) Defendant argues that "[a] bare assertion that she was qualified is insufficient under *Twombly*/*Iqbal*" and that "even her limited factual assertions cut against plausibility." (*Id.* at 4-5.) Third, Defendant argues that "Plaintiff fails to plausibly allege causation." (*Id.* at 5.) Specifically, Defendant argues that "Plaintiff's sole theory of causation is that Defendant 'should have been aware' of her disability because she took FMLA leave and received STD benefits," but Plaintiff "concedes she concealed the reason for her leave." (*Id.*) Defendant argues that "[w]ithout knowledge of a disability, Defendant could not have taken any adverse action 'because of' it." (*Id.*)

In response, Plaintiff argues that "Defendant's arguments . . . rest on a cramped reading of the FAC and invite the Court to resolve factual disputes and draw inferences in Defendant's favor." (Doc. 16 at 4.) Plaintiff first argues that she "alleges Defendant had actual or constructive knowledge of her disability." (*Id.* at 5.) Specifically, Plaintiff argues that "an employee need only provide information sufficient to put the employer on notice that an accommodation may be needed" and "[w]hether an employer had sufficient notice is a contextual, fact-dependent inquiry that is not properly resolved on a motion to dismiss."

---

[1] Although the FAC groups "Disability Discrimination and Failure to Accommodate" under one cause of action (Doc. 14 at 10), the parties' briefs analyze each claim separately. Accordingly, the Court will do the same. *Cf. Fox v. MHM Health Pros. LLC*, 2024 WL 4364133, *19-20 (D. Ariz. 2024) (analyzing the two claims separately where the cause of action was styled "as a claim for 'Disability Discrimination; Failure to Accommodate' in violation of the ADA").

(*Id.*) Plaintiff argues that she "alleges that Defendant was aware she exhausted the full twelve weeks of FMLA leave, continued receiving short-term disability benefits beyond that leave, and was unable to return to work at the scheduled end of leave" and that "[t]hose allegations plausibly support an inference that Defendant knew or should have known that Plaintiff may require accommodation, notwithstanding the absence of a formal diagnosis disclosure." (*Id.*) Plaintiff criticizes "Defendant's reliance on nonbinding cases" because those cases, among other things, "arise at summary judgment" and "involve materially different factual records." (*Id.* at 6.) Plaintiff argues that she "does not contend that FMLA leave alone automatically establishes ADA notice" but that "the FAC alleges additional facts—including exhaustion of the full twelve weeks of FMLA leave, continued receipt of short-term disability benefits beyond that leave, and an inability to return to work at the scheduled end of leave—from which Defendant's knowledge and resulting duty to inquire may plausibly be inferred." (*Id.*) Plaintiff also contends that "Defendant's reliance on a third-party leave administrator does not absolve it of its independent obligation under the ADA to inquire and engage once it had reason to inquire whether Plaintiff may require accommodation." (*Id.* at 7.) Next, Plaintiff argues that "she was a qualified individual." (*Id.*) Plaintiff contends that "[a]t the pleading stage, [she] is not required to prove she could perform every essential function of her position; rather, she must allege facts that plausibly support an inference that she was able to perform the essential functions of her job with or without reasonable accommodation." (*Id.*) Finally, as for causation, Plaintiff argues that "Defendant made no effort to engage her regarding return-to-work or accommodation and instead terminated her employment approximately two weeks after her protected leave expired." (*Id.* at 8.)

In reply, Defendant reiterates the same three arguments detailed above. (Doc. 17 at 2-5.) Specifically, Defendant argues that "Plaintiff only alleges she requested and was granted FMLA leave and was receiving short-term disability payments" and that "[b]ecause employees can take FMLA leave and require extensions of leave for a variety of reasons, it is unfair to penalize Defendant for not *assuming* Plaintiff had a disability

when she intentionally withheld that information." (*Id.* at 2-3.) Defendant also argues that "[b]ased on the facts alleged in the pleadings alone, the Court cannot reasonably infer Defendant—who was ignorant to Plaintiff's alleged disability due to her admitted intentional decision not to tell them about it *and* was not required to assume she needed any extra accommodation—terminated Plaintiff because of her alleged disability." (*Id.* at 4-5.)

2. Analysis

"To set forth a prima facie disability discrimination claim, a plaintiff must establish that: (1) he is disabled within the meaning of the ADA; (2) he is qualified (i.e., able to perform the essential functions of the job with or without reasonable accommodation); and (3) the employer terminated him because of his disability." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018). The Court will focus on the third element because it is dipositive.

"As part of the prima facie case under the ADA, Plaintiff must show that [s]he was terminated because of [her] disability" and thus "must prove that the employer had knowledge of [her] disability when the adverse employment decision was made." *Foster v. City of Oakland*, 649 F. Supp. 2d 1008, 1018 (N.D. Cal. 2009) (citation omitted). Without knowledge of the alleged disability, there can be no disability-based discrimination. *See, e.g.*, *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) (affirming grant of summary judgment on ADA discrimination claim where "[e]ven if it is assumed that [plaintiffs] had a medically cognizable drug addiction disability, there was no showing that Longview [the employer] had any knowledge of it and that Longview fired them because of it"); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason."); *Babu Neervila v. Cnty. of Los Angeles Dep't of Pub. Soc. Servs.*, 2026 WL 1917698, *4 (C.D. Cal. 2026) ("Here, the FAC's

allegations are too vague or conclusory to establish a prima facie case under the ADA or the Rehabilitation Act. . . . [T]he FAC's allegations fail to demonstrate that Plaintiff's employer was on notice of Plaintiff's alleged disability. At most, the FAC lists Plaintiff's health conditions, alleges that he submitted numerous requests for a work transfer or an ergonomic chair, and asserts [in] a conclusory manner that such requests constituted reasonable accommodation requests within the meaning of the ADA/Rehabilitation Act."); *Longariello v. Phoenix Union High Sch. Dist.*, 2009 WL 4827014, *5 (D. Ariz. 2009) ("Plaintiff fails to allege that Defendant's decision not to hire him was based on his disability or that any of Defendant's employees even knew of his alleged disability."). *See also Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996) ("Morisky concedes that neither she nor Magaz, her vocational counselor, informed any of the employees of Broward County of her specific disability. Instead, she relies upon the information furnished, that she could not read and had taken special education courses, as sufficient to put Broward County on notice of her developmental disorder. While illiteracy is a serious problem, it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental impairment. Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA. Other courts have rejected the contention that a plaintiff can sustain a prima facie case of handicap discrimination without proof that an employer had actual or constructive knowledge of an applicant's disability.").

The alleged disability at issue here is generalized anxiety disorder. (Doc. 14 ¶ 17.) However, the FAC does not allege that Plaintiff ever informed Defendant that she suffered from generalized anxiety disorder. To the contrary, the FAC acknowledges that Plaintiff intentionally withheld information regarding the existence of this condition from Defendant—"Plaintiff did not inform her supervisor that her FMLA leave was for mental health treatment because she was concerned that doing so would result in further dismissal or minimization of her needs." (*Id.* ¶ 42.)

A more complicated issue arises from Defendant's use of Voya Financial, a third-

party benefits manager, to administer its FMLA leave program. Defendant seems to take the position that, in light of this arrangement, any knowledge Voya Financial may have obtained regarding Plaintiff's mental health condition—such as statements made by Plaintiff when applying for FMLA leave—cannot be imputed to it. (Doc. 15 at 3, citations omitted ["Plaintiff alleges she 'sought FMLA leave to address her rapidly worsening mental health condition, coordinating that leave through Defendant's third-party benefits manager, Voya Financial.' Crucially, however, she expressly admits she did not inform her supervisor of the medical reason for her leave. These allegations are fatal to both her ADA discrimination and ADA failure-to-accommodate claims."].) On the one hand, the Court is skeptical that an employer may insulate itself from knowledge in this manner. At least in the Ninth Circuit, courts "must turn to traditional agency/employer-employee principles to determine whether [an employer] should be charged with knowledge of" an employee's disability. *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 876 (9th Cir. 1989). The facts alleged in the FAC raise a plausible inference that Voya Financial was acting as Defendant's agent, and thus any knowledge Voya Financial may have obtained regarding Plaintiff's alleged disability may be imputed to Defendant. *Cf. Marshall v. Whirlpool Corp.*, 2010 WL 348344, *1 (N.D. Okla. 2010) ("UniCare, as a third party administrator, makes benefit determinations and acts as a disbursing agent for the payment of short term disability benefits which are funded by Whirlpool.").[2]

On the other hand, the FAC is vague as to what Plaintiff actually stated in her FMLA leave applications (and other communications) to Voya Financial—it does not clearly allege why Plaintiff asserted that she was entitled to FMLA leave, much less clearly allege that Plaintiff informed Voya Financial that she suffered from generalized anxiety disorder or some other mental health condition. (Doc. 14 ¶¶ 41, 46.) This omission is significant

[2] Moreover, if Voya Financial directly relayed any information it learned about Plaintiff to Defendant, that too would impart knowledge to Defendant. *See, e.g.*, *Haahr v. Ovations Food Serv. LP*, 2023 WL 3125777, *5 (D. Ariz. 2023) ("An employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, *such as through a third party* or by observation.") (citation omitted) (emphasis added).

because "courts have found FMLA leave requests, in the context of ADA discrimination . . . , do not in of themselves impute knowledge of a disability to the employer." *Velasquez v. Constellation Brands US Operations, Inc.*, 2019 WL 2642510, *11 (E.D. Cal. 2019) (collecting cases). This conclusion makes sense, as "taking leave under the FMLA does not necessarily mean Plaintiff is disabled." *Id.* at *10. *See also Atwood v. PCC Structurals, Inc.*, 2015 WL 3606323, *11 (D. Or. 2015) ("Just because an employee, like Plaintiff, requires intermittent FMLA leave for a serious health condition does not mean that the employer is automatically on notice that the employee is 'disabled' as that term is defined under the ADA."). Indeed, "[i]f the court were to reach the conclusion sought by plaintiff, virtually every request for FMLA leave for a serious health condition would trigger an employer's duty to engage in the interactive process." *Chapman v. UPMC Health Sys.*, 516 F. Supp. 2d 506, 533 (W.D. Pa. 2007). *See also Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 829 (S.D. Ohio 2004) ("[M]any medical conditions do not qualify as disabilities for purposes of the ADA. . . . To construe an employer as having notice of an employee's disability every time an employee is absent from work for a medical reason would defy common sense."). Simply put, without more detail about what Plaintiff told Voya Financial, Plaintiff's receipt of FMLA leave does not raise a plausible inference that she was disabled within the meaning of the ADA.

Nor does Plaintiff's receipt of short-term disability benefits change the outcome (at least absent more information about the specific statements that Plaintiff made when seeking those benefits). As one court persuasively explained: "To the extent [plaintiff] does claim that [the employer] perceived him as disabled based on its grant of his FMLA requests and authorization of disability benefits, the Court rejects that argument. [Plaintiff] has not set forth any authority to support that proposition and, indeed, the standards for 'disability' within the meaning of disability benefits and 'disability' within the meaning of the ADA are quite different. The receipt of short term disability benefits does not automatically indicate that an employer perceived an employee as disabled for purposes of the ADA." *Foos v. Taghleef Indus., Inc.*, 132 F. Supp. 3d 1034, 1053 (S.D. Ind. 2015).

*See also Miller v. Continental Carbon Co.*, 2021 WL 12307480, *8 (S.D. Tex. 2021) ("Miller separately contends that Continental Carbon regarded him as having an actual or perceived physical or mental impairment . . . . To support this contention, Miller points to VOYA's approval of short-term disability benefits for six months. Evidence that an employer granted an employee's request for twenty-six weeks of short-term disability leave, however, is not enough to demonstrate that an employer regarded the employee as disabled. Eligibility for receiving short term disability benefits is typically much different than what is required to show an ADA disability.") (citation omitted); *Boadi v. Center for Human Development, Inc.*, 239 F. Supp. 3d 333, 352-53 (D. Mass. 2017) ("Where employers have no notice of a mental illness . . . , courts have found employers not to be on notice of a disability. . . . [T]he fact that [an HR representative] provided her with an application for short term disability benefits before April 22, 2013 did not indicate [the employer's] awareness of Plaintiff's disability, as that term is defined by the ADA, because the standards for 'disability' within the meaning of disability benefits and 'disability' within the meaning of the ADA are quite different.") (cleaned up).

Finally, the allegation that Plaintiff informed Pennington, during a meeting in December 2023, that Plaintiff "was feeling overwhelmed" (Doc. 14 ¶ 33) is also insufficient to raise a plausible inference that Defendant was aware that Plaintiff suffered from generalized anxiety disorder or otherwise perceived Plaintiff as suffering from generalized anxiety disorder. The FAC does not allege that Plaintiff linked this feeling of being overwhelmed to any underlying mental health condition—instead, the FAC alleges that Plaintiff attributed her concern to an unfair workload imbalance between herself and a colleague: "Plaintiff informed Ms. Pennington that she was feeling overwhelmed by her workload, and provided her the information showing her colleague with a significantly reduced workload." (*Id.*) Under these circumstances, the passing comment to feeling "overwhelmed" was insufficient to place Defendant on notice that Plaintiff suffered from generalized anxiety disorder. *Cf. Williamson v. Clarke County Dept. of Human Resources*, 834 F. Supp. 2d 1310, 1321 (S.D. Ala. 2011) ("[Plaintiff] notified Williams in January

2009 that he felt 'overwhelmed' at work and that a reduction in intake responsibilities would allow him additional time to complete his other job duties. Plaintiff's insuperable problem is that he never connected the dots. That is to say, plaintiff did not notify his supervisors at the time he asked for an adjustment of work duties that the reason for his request was that he required an accommodation for his medical condition. By his own admission, Williamson never informed CCDHR that he was requesting a reduction of his intake duties because of his ADHD. . . . There are myriad reasons unrelated to a disability why a worker might fail to complete his duties in a timely manner. The law did not require CCDHR to speculate, guess or assume that plaintiff's issues were disability-related, when he never saw fit to inform them of that link.").

It is true, as Plaintiff emphasizes, that an employer may become aware of an employee's disability through informal means and that the question of knowledge is often contextual and fact-intensive. (Doc. 16 at 5.) But it doesn't follow, from these principles, that the issue of knowledge is never "properly resolved on a motion to dismiss." (*Id.*) On this record, where Plaintiff acknowledges that she specifically withheld information regarding her generalized anxiety disorder from Defendant, does not provide any factual allegations regarding what she told Voya Financial when seeking FMLA leave (or whether Voya Financial relayed that unspecified information to Defendant), and merely points to the fact that she received FMLA leave and short-term disability benefits, Plaintiff has failed to plausibly allege the sort of knowledge required to support an ADA disability discrimination claim.

B. **Failure To Accommodate (Count One)**

The parties' arguments regarding Plaintiff's second theory of liability under Count One, failure to accommodate, largely track the arguments summarized above. At bottom, Plaintiff's ADA failure to accommodate claim suffers from the same deficiency as her ADA disability discrimination claim—the FAC fails to allege Defendant had knowledge, either actual or constructive, of her generalized anxiety disorder.

As with disability discrimination, "to establish a prima facie case under the [ADA]

that [an employer] failed to accommodate his disability, [a plaintiff] must first demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action *because of* his disability." *Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (emphasis added). "Implicit in these statutory duties is that the employer actually *know* of the alleged disability in question." *Ludovico v. Kaiser Permanente*, 57 F. Supp. 3d 1176, 1198-99 (N.D. Cal. 2014). "Without such knowledge, an employer cannot be faulted for failing to accommodate the disability, nor can it be said to have taken any action because of the mental disability." *Id.* at 1199. In other words, "[b]efore an employer must make accommodation for the physical or mental limitation of an employee, the employer must have knowledge that such a limitation exists. . . . The logic of this proposition is overwhelming and has been affirmed repeatedly by other courts construing both the ADA and the Rehabilitation Act of 1973." *Miller v. Nat'l Casualty Co.*, 61 F.3d 627, 629-30 (8th Cir. 1995). *See also Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (acknowledging that "[i]n some circumstances . . . the employee need not even request the accommodation" but emphasizing that an employer's obligation to "initiate the reasonable accommodation interactive process without being asked" only arises if, among other things, the employer "*knows* that the employee has a disability") (emphasis added). Accordingly, Plaintiff has failed to state a claim for failure to accommodate in Count One.

C. **Retaliation (Count Two)**

1. The Parties' Arguments

First, Defendant argues that "[h]aving admitted she concealed the nature of her condition, [Plaintiff] cannot plausibly allege that Defendant knew she was engaging in any ADA-protected activity" and that "[w]ithout employer knowledge, there can be no retaliation claim as a matter of law." (Doc. 15 at 8.) Second, Defendant argues that "Plaintiff's own allegations negate but-for causation." (*Id.*) Specifically, Defendant argues that "Plaintiff concedes she was permitted to take her full FMLA leave and utilize short-

term disability benefits" and that "[t]hese allegations are inconsistent with, and indeed undermine, any claim that her leave—and especially the undisclosed medical basis of that leave—was the but-for cause of her termination." (*Id.*)

In response, Plaintiff first argues that she "alleges protected activity known to Defendant." (Doc. 16 at 11.) Specifically, Plaintiff argues that "[p]rotected activity under the ADA includes requesting reasonable accommodation or medical leave and opposing workplace practices related to a disability" and that the FAC "alleges that she sought medical leave to address her anxiety-related symptoms—conduct that plausibly constitutes protected activity under the ADA at the pleading stage." (*Id.*) Second, Plaintiff argues that she sufficiently "alleges but-for causation" because the FAC "alleges that Defendant rescinded a promised bonus, scrutinized her performance during protected leave, and terminated her employment shortly after that leave expired" and "[t]hese allegations plausibly support an inference that Plaintiff's protected activity was a but-for cause of the adverse actions alleged." (*Id.*) Plaintiff adds that "Defendant's arguments improperly seek fact-finding at the pleading stage." (*Id.* at 11-12.)

In reply, Defendant argues that "[t]he foundation of Plaintiff's ADA retaliation claim is Defendant's knowledge of Plaintiff's disability and the purpose for her leave" but "as established . . . Plaintiff fails to plead Defendant had any knowledge of her disability." (Doc. 17 at 5.) Defendant also argues that, "regarding causation, Plaintiff only has temporal proximity as alleged evidentiary support." (*Id.* at 6.) Defendant contends that "on the face of the [FAC], it is clear Plaintiff received a written warning *before* taking her leave and Defendant maintains a 'company-wide policy denying bonuses to employees who receive discipline'" and that "[b]oth allegations require no fact finding work by the Court and cut against establishment of a causal connection between the protected activity and the adverse action as required by the ADA." (*Id.*)

2. <u>Analysis</u>

Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).[3] As both parties acknowledge, "the standard for the 'causal link' is but-for causation." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. Causation can be proven by direct evidence of retaliatory motivation or it may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the activity and the allegedly retaliatory employment decision." *Baginski v. City & Cnty. of Honolulu*, 2017 WL 11767983, *7 (D. Haw. 2017) (citation omitted).

Plaintiff's ADA retaliation claim fails for essentially the same reasons as her ADA discrimination and failure-to-accommodate claims. As noted above, a plaintiff asserting an ADA retaliation claim must establish, *inter alia*, that she engaged in protected activity under the ADA and that her employer was aware of that protected activity. The FAC identifies Plaintiff's protected activity as her acts of requesting and taking "protected leave." (Doc. 14 ¶¶ 97, 104.) But the "protected leave" at issue was Plaintiff's request to take *FMLA* leave.

Although courts are not unanimous on the issue, many have concluded that "[a] request for FMLA leave, without more, cannot constitute a protected activity for the

[3] Although Defendant argues that "[r]etaliation claims under the ADA apply the *McDonnell Douglas* burden-shifting framework" (Doc. 15 at 7), "at the motion to dismiss stage, the Ninth Circuit has held that Federal Rule of Civil Procedure 8(a), not *McDonnel[l] Douglas*, applies." *Henderson v. Oregon Dep't of Hum. Servs.*, 2020 WL 4346937, *2 (D. Or. 2020). *See also Borenstein v. Animal Found.*, 2023 WL 2810258, *13 (D. Nev. 2023) ("TAF argues that Borenstein's claim for retaliation under the ADA cannot survive the burden-shifting framework established by [*McDonnell Douglas*]. The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement.") (cleaned up).

purposes of an ADA retaliation claim." *Kastrati v. Progress of Peoples Mgmt. Corp.*, 2020 WL 6940991, *5 (E.D.N.Y. 2020). *See also Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 814-15 (7th Cir. 2015) ("Mr. Preddie must have engaged in a statutorily protected activity—in other words, he must have asserted his rights under the ADA by either seeking an accommodation or raising a claim of discrimination due to his disability. . . . His periodic requests for his own health-related leave, . . . without more, does not qualify as 'protected activity' under the ADA."); *Sowers v. Bassett Furniture Indus., Inc.*, 2021 WL 276169, *7 n.7 (W.D. Va. 2021) ("Sowers says his request for FMLA leave was a protected activity, which it is under FMLA, but requesting FMLA leave is not a protected activity under the ADA."); *Woodson v. Smith*, 2021 WL 4169357, *5 (D.D.C. 2021) ("Woodson points to her request for intermittent FMLA leave, equating that request with protected activity under the ADA. . . . But Woodson did not bring a claim under FMLA. [An ADA] retaliation claim hinges on an employee's engagement in activity protected under the ADA, not FMLA—a separate statute. Protected activity under the ADA does not include asking for FMLA leave, but instead includes activities such as requesting a reasonable accommodation for a disability."); *Arms v. Milwaukee Cnty. (Dept. on Aging)*, 2019 WL 1981036, *5 (E.D. Wisc. 2019) ("[Plaintiff] did not engage in any activity protected by the ADA when she requested and took FMLA leave.").[4]

These courts' reasoning is sound. The ADA makes it unlawful to retaliate against any individual because that person (1) "opposed any act or practice made unlawful *by this chapter*" or (2) or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this chapter*." 42 U.S.C. § 12203(a) (emphases added). As the italicized text makes clear, it is "fundamental that in order to state an ADA retaliation claim, a plaintiff must allege retaliation in connection with an activity *protected*

[4] Some of the contrary non-binding authorities include *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156-57 (3d Cir. 2017) ("We recognize that a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA . . . .") and *Bernheim v. N.Y. City Dep't of Educ.*, 2021 WL 4198126, *3 (S.D.N.Y. 2021) ("[T]he Court concludes that, under the facts of this case, Plaintiff's request for FMLA leave was a protected activity sufficient to satisfy the first prong of a prima facie case of ADA retaliation.").

*by the ADA*." *Samuels v. City of New York*, 2023 WL 5717892, *12 (S.D.N.Y. 2023) (cleaned up) (emphasis added). *See also Smith v. Government Employees Ins. Co.*, 2026 WL 1858124, *3 (D. Ariz. 2026) ("Protected activity includes opposing any act or practice made unlawful *by the ADA* or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing *pursuant to the ADA*.") (emphasis added); *Reckley v. Goodman Grp.*, 2020 WL 5893844, *10 (D. Mont. 2020) ("To establish a prima facie case of retaliation under the ADA, a plaintiff must establish three elements: (1) engagement in protected opposition to *ADA* discrimination or participation in an *ADA* proceedings; (2) an adverse action contemporaneous or subsequent to such protected activity; and (3) a causal connection between the protected activity and the adverse action.") (emphases added). Thus, complaining about conduct that is prohibited by other statutes that regulate the workplace or participating in processes made available under those other statutes does not necessarily constitute "protected activity" for purposes of an ADA retaliation claim, even if it may qualify as protected activity for purposes of a retaliation claim asserted under those other statutes. *See, e.g.*, *Smith*, 2026 WL 1858124 at *3 ("[T]he Complaint does not allege facts sufficient to show Plaintiff's HR or OSHA complaints regarding Defendant's bathroom policy constituted protected activity under the ADA. Plaintiff does not allege Defendant's bathroom policy itself violates the ADA, nor does he indicate the purpose of his meeting with HR or his OSHA complaint was to raise an alleged ADA violation. Absent factual allegations connecting Plaintiff's HR or OSHA complaints to rights protected by the ADA, he fails to allege protected activity and thus fails to state a claim for retaliation under the ADA."); *Samuels*, 2023 WL 5717892 at *12 ("[N]early all of the plaintiff's alleged 'protected activities' were undertaken to protest or oppose acts of gender-based misconduct, not disability discrimination—and accordingly, those actions would be protected under Title VII, but not under the ADA.").

Against this backdrop, it is difficult to see how making a request for FMLA leave (or taking FMLA leave) *necessarily* qualifies as protected activity under the ADA. True, "[p]ursuing one's rights under the ADA constitutes a protected activity," *Pardi*, 389 F.3d

at 850, but seeking FMLA leave is not necessarily the same thing as pursuing one's rights under the ADA. Indeed, "[t]he ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief. FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision." *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017) (cleaned up).

At any rate, even if it might be possible, on a different set of facts, to plausibly allege that submitting a request for FMLA leave (or taking FMLA leave) also qualified as protected activity under the ADA, any such allegation is implausible on this record. As noted, Plaintiff went out of her way to prevent Defendant from learning that she suffers from general anxiety disorder. Additionally, the FAC does not provide sufficient factual allegations regarding what Plaintiff told Voya Financial when seeking FMLA leave. As a result, there is an insufficient basis for inferring that Defendant had knowledge that Plaintiff's FMLA-related activity also qualified as ADA protected activity.

III. Leave To Amend

In its motion to dismiss, Defendant argues that "Plaintiff has alleged all information available to her and any future amendments would be futile." (Doc. 15 at 9.)[5] Defendant also argues that "Plaintiff has already had the opportunity to amend her Complaint once and the deficiencies addressed above remain." (*Id.*) In response, Plaintiff "respectfully requests leave to amend." (Doc. 16 at 12.)

"Rule 15 advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, the Court should grant leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

---

[5] In support of its contention, Defendant argues that the Court "may consider and take judicial notice of Plaintiff's EEOC Charge because Plaintiff references and relies on that administrative agency filing in her Complaint." (Doc. 15 at 9 n.1.) Defendant, however, has not provided a copy of Plaintiff's EEOC Charge.

Plaintiff's leave request is granted in light of the highly permissive standard under Rule 15(a) and because this is the first time the Court has been called upon to address the sufficiency of her factual allegations. Should Plaintiff choose to amend, she is encouraged to provide additional factual details regarding her submission of the request to take FMLA leave, regarding her submission of the request for short-term disability benefits, regarding any communications Voya Financial may have had with Defendant, and regarding any communications she may have had with Defendant following the expiration of her term of FMLA leave.

Accordingly,

**IT IS ORDERED** that:

1. Defendant's motion to dismiss (Doc. 15) is **granted**, as set forth above.

2. Plaintiff may file a Second Amended Complaint ("SAC") within 14 days of the issuance of this order. Any changes shall be limited to attempting to rectify the deficiencies identified in this order. Plaintiff shall, consistent with LRCiv 15.1, attach a redlined version of the pleading as an exhibit.

Dated this 14th day of August, 2026.

Dominic W. Lanza
United States District Judge